Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISS LAW**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>Plaintiff,<br><br>vs.<br><br>GRAYBUG VISION, INC., ERIC BJERKHOLT, FREDERIC GUERARD, CHRISTINA ACKERMANN, JULIE EASTLAND, DIRK SAUER, and CHRISTY SHAFFER,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Stephen Bushansky ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Graybug Vision, Inc. ("Graybug" or the "Company") and the members of Graybug's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

to which Graybug will merge with CalciMedica, Inc. ("CalciMedica") through Graybug's subsidiary Camaro Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On November 21, 2022, Graybug and CalciMedica issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated November 21, 2022 (the "Merger Agreement") to merge Graybug with CalciMedica.  Under the terms of the Merger Agreement, each share of CalciMedica common stock will be converted into the right to receive 0.4073 shares of Graybug common stock (the "Merger Consideration").  Following completion of the merger, CalciMedica's equityholders are expected to own or hold rights to acquire 71.4% of the combined company and Graybug's equityholders are expected to own or hold rights to acquire 28.6% of the combined company.

3.     On December 14, 2022, Graybug filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Graybug stockholders vote to approve the issuance of Graybug common stock pursuant to the Merger Agreement (the "Stock Issuance"), omits or misrepresents material information concerning, among other things: (i) CalciMedica's financial projections, relied upon by the Company's financial advisor Piper Sandler & Co. ("Piper Sandler") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Piper Sandler and (iii) Piper Sandler's potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Graybug's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Stock Issuance.  Plaintiff seeks to enjoin the stockholder vote on the Stock Issuance unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Graybug.

9. Defendant Graybug is a Delaware corporation, with its principal executive offices located at 203 Redwood Shores Parkway, Suite 620, Redwood City, California 94065. The Company is a clinical-stage biopharmaceutical company, focused on the development of medicines for the treatment of diseases of the retina and optic nerve. Graybug's common stock trades on the Nasdaq Global Market under the ticker symbol "GRAY."

10. Defendant Eric Bjerkholt ("Bjerkholt") has been a director of the Company since September 2020.

11. Defendant Frederic Guerard ("Guerard") has been President, Chief Executive Officer ("CEO"), and a director of the Company since February 2019.

12. Defendant Christina Ackermann ("Ackermann") has been a director of the Company since September 2020.

13. Defendant Julie Eastland ("Eastland") has been a director of the Company since September 2020.

14. Defendant Dirk Sauer ("Sauer") has been a director of the Company since April 2022.

15. Defendant Christy Shaffer ("Shaffer") has been Chairperson of the Board since March 2015, and a director of the Company since February 2015.

16. Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

17. CalciMedica is a clinical-stage biopharmaceutical company focused on developing first-in-class therapies for life-threatening inflammatory diseases with high unmet need. CalciMedica's proprietary technology targets the inhibition of calcium-release activated calcium ("CRAC") channels designed to modulate the immune response and protect against tissue cell injury, with the potential to provide therapeutic benefits in life-threatening inflammatory diseases for which there are currently no approved therapies. CalciMedica's lead product candidate Auxora, a proprietary, intravenous-formulated CRAC channel inhibitor, has demonstrated positive and consistent clinical results and a favorable safety profile in four completed efficacy clinical trials. Auxora is in development for acute pancreatitis and asparaginase-associated pancreatitis.

18. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Graybug.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

19. Graybug has historically been a clinical-stage biopharmaceutical company focused on developing transformative medicines for the treatment of ocular diseases. Graybug's novel proprietary technologies are designed to release drugs in ocular tissue at a controlled rate for up to 12 months in order to improve patient compliance, reduce healthcare burdens and, ultimately, deliver better clinical outcomes. Graybug's lead product candidate, GB-102, is an intravitreal injection of a microparticle depot formulation of sunitinib, a potent inhibitor of neovascular growth and permeability, which are leading causes of retinal disease. GB-102 is designed to provide pan-vascular

endothelial growth factor inhibition for six months or longer while minimizing fluctuations in retinal thickness in between treatments, which is emerging as predictive of visual outcomes. Furthermore, Graybug has been using its proprietary technologies to develop GB-401, an intravitreally injected implant formulation of a beta-adrenergic blocking agent prodrug with a target dosing regimen of once every six months or longer for the treatment of primary open-angle glaucoma ("POAG").

**The Proposed Transaction**

20.     On November 21, 2022, Graybug and CalciMedica issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> REDWOOD CITY, Calif. and LA JOLLA, Calif., Nov. 21, 2022 (GLOBE NEWSWIRE) -- Graybug Vision, Inc. (Nasdaq: GRAY) (Graybug) and CalciMedica Inc. (CalciMedica) today announced that they have entered into a definitive merger agreement to combine the companies in an all-stock transaction. The combined company will focus on further developing CalciMedica's lead product candidate Auxora™, a proprietary, intravenous-formulated, small molecule calcium-release activated calcium (CRAC) channel inhibitor, to treat life-threatening inflammatory diseases, such as acute pancreatitis (AP), asparaginase-associated pancreatitis (AAP), acute kidney injury (AKI), and acute hypoxemic respiratory failure (AHRF), for which there are no currently approved therapies. Auxora, which modulates the immune response and protects against tissue cell injury, has been studied in four completed efficacy clinical trials, demonstrating positive and consistent clinical results, as well as a favorable safety profile. Subject to each company's stockholder approval, the combined company is expected to trade on the Nasdaq Global Market.
>
> With approximately $35 million in cash and cash equivalents anticipated from the combined company, including a private placement financing expected to occur immediately prior to the merger closing, the combined company is expected to have a cash runway into the second half of 2024, funding the advancement of Auxora in AP and AAP through clinical milestones in 2023. The proposed merger is expected to close in the first quarter of 2023.
>
> "After completing a comprehensive strategic review, we determined that the proposed merger with CalciMedica would provide the best return for Graybug stockholders moving forward," said Frederic Guerard, Pharm.D., Chief Executive Officer of Graybug. "The decision by our management and board of directors to select CalciMedica to be our merger partner will allow our stockholders to participate in a company with a strong clinical-stage pipeline poised to revolutionize treatment for large, underserved patient populations suffering from life-threatening inflammatory diseases worldwide."
>
> The combined company plans to advance the development of Auxora through multiple clinical trials and anticipates the following milestones in 2023:
>
> • Results from an ongoing Phase 2b clinical trial (CARPO) in AP patients with systemic inflammatory response syndrome (SIRS) in second half of 2023 — CARPO is a randomized, double-blind, placebo-controlled, dose-ranging trial

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- intended to establish efficacy in AP. It is expected to enroll 216 patients. AP can be a life-threatening condition where the pancreas becomes inflamed, sometimes leading to pancreatic cell death or necrosis, systemic inflammation, and organ failure. There are an estimated 275,000 hospitalizations for AP annually in the United States, of which approximately 40% present with SIRS, which can compromise the function of other tissues or organs, including the lungs, and is responsible for much of the mortality seen in AP. Details of the CARPO trial are available on clinicaltrials.gov (NCT04681066).

- Results from an ongoing investigator-sponsored Phase 1/2 clinical trial (CRSPA) in pediatric patients who develop AAP as a result of treatment with asparaginase for their underlying acute lymphoblastic leukemia (ALL) in first half of 2023 — CRSPA is a Phase 1/2 trial being conducted in pediatric patients with AAP, which is acute pancreatitis resulting from the administration of asparaginase. Treatment with asparaginase triggers the development of AAP in 7-10% of patients with ALL, with more than half of those patients developing pancreatic necrosis. CalciMedica believes that the CRSPA trial has defined an optimal pediatric dose and plans to meet with the U.S. Food and Drug Administration in the first half of 2023 to determine the path forward for a potential accelerated approval of Auxora. Details of the CRSPA trial are available on clinicaltrials.gov (NCT04195347).

"I'm extremely pleased to announce this proposed merger with Graybug, which comes at a pivotal time for our company," said Rachel Leheny, Ph.D., Chief Executive Officer of CalciMedica. "This transaction will provide us with the financial strength to advance the development of our lead candidate, Auxora, in life-threatening inflammatory illnesses. We have multiple value-driving milestones expected over the next 12 months, including data from our Phase 2b CARPO clinical trial in patients with AP and a potential path to accelerated approval for Auxora in AAP. At CalciMedica, we are focused on delivering novel therapies that target CRAC channel inhibition to underserved patients with life-threatening inflammatory diseases for which no approved therapies exist. This transaction serves as a significant next step in the advancement of our important mission."

**About the Proposed Transaction, Management and Organization**

Graybug equity holders are expected to collectively own approximately 29% of the combined company, and pre-merger CalciMedica equity holders are expected to collectively own approximately 71% of the combined company, in each case, on a fully diluted basis using the treasury stock method. The percentage of the combined company that Graybug's equity holders will own as of the close of the transaction is subject to certain adjustments as described in the merger agreement, including an adjustment based on the amount of Graybug's net cash at closing.

Following the merger, the combined company will be headquartered in La Jolla, California and Rachel Leheny, Ph.D., will serve as Chief Executive Officer of the combined company. The merger agreement provides that the board of directors of the combined company will be composed of seven members, five selected by CalciMedica and two selected by Graybug.

The merger agreement has been unanimously approved by the boards of directors of both companies and is subject to the approvals by the stockholders of each company and other customary closing conditions.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Piper Sandler is serving as financial advisor and Fenwick & West LLP is serving as legal counsel to Graybug. Oppenheimer & Co. Inc. is serving as financial advisor and Cooley LLP is serving as legal counsel to CalciMedica.

***The Proxy Statement Contains Material Misstatements or Omissions***

21. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Graybug's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Stock Issuance.

22. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) CalciMedica's financial projections, relied upon by Piper Sandler for its financial analysis; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Piper Sandler; and (iii) Piper Sandler's potential conflicts of interest.

***Material Omissions Concerning CalciMedica's Financial Projections***

23. The Proxy Statement omits material information regarding CalciMedica's financial projections.

24. For example, the Proxy Statement sets forth that:

> [t]he Financial Projections included certain assumptions relating to, among other things, CalciMedica's expectations, which may not prove to be accurate, relating to the business, earnings, cash flow, ability to access additional capital, assets, liabilities and prospects of CalciMedica (including the probability of success of Auxora in acute pancreatitis and acute kidney injury, the market for any approved product, the timing of approval and operating expenses).

Proxy Statement at 118. The Proxy Statement fails, however, to disclose the specific assumptions underlying the financial projections, including the probability of success of Auxora in acute pancreatitis and acute kidney injury, the market for any approved product, the timing of approval and operating expenses.

25. Additionally, the Proxy Statement fails to disclose the line items underlying: (i) EBITDA; and (ii) Unlevered Free Cash Flow.

*Material Omissions Concerning Piper Sandler's Financial Analyses*

26. The Proxy Statement omits material information regarding Piper Sandler's financial analyses.

27. The Proxy Statement describes Piper Sandler's fairness opinion and the various valuation analyses Piper Sandler performed in support of its opinion. However, the descriptions of Piper Sandler's fairness opinion and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, Graybug's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Piper Sandler's fairness opinion in determining whether to vote in favor of the Stock Issuance.

28. With respect to Piper Sandler's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the equity value and enterprise value for each of the US-listed biotech companies that Piper Sandler reviewed for its analysis.

29. With respect to Piper Sandler's *Selected IPOs Analysis*, the Proxy Statement fails to disclose the pre-money equity value and adjusted pre-money enterprise value for each of the US-listed biotech companies that completed an initial public offering of common stock since January 1, 2020, that Piper Sandler reviewed for its analysis.

30. With respect to Piper Sandler's Discounted Cash Flows Analysis, the Proxy Statement fails to disclose: (i) quantification of the adjustments made by Graybug management to the after-tax free cash flows to reflect probability of success weightings based on industry standards published by BIO based on statistical probability in achieving specified development milestones by biotechnology companies; and (ii) quantification of the inputs and assumptions underlying the discount rate range of 15.0% to 19.0%.

31. Without such undisclosed information, Graybug stockholders cannot evaluate for themselves whether the financial analyses performed by Piper Sandler were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full

disclosure of the omissions identified above is required to ensure that stockholders can fully evaluate the extent to which Piper Sandler's opinion and analyses should factor into their decision whether to vote in favor of or against the Stock issuance.

32. The omission of this material information renders the statements in the "Certain Unaudited Financial Projections and Liquidation Analysis" and "Opinion of Graybug's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Piper Sandler's Potential Conflicts of Interest***

33. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Piper Sandler.

34. The Proxy Statement fails to disclose the timing and nature of the past services, if any, that Piper Sandler provided to CalciMedica, including the amount of compensation, if any, Piper Sandler received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

35. The omission of this material information renders the statements in the "Opinion of Graybug's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

36. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and the other stockholders of Graybug will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

# CLAIMS FOR RELIEF

## COUNT I
### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

37. Plaintiff repeats all previous allegations as if set forth in full.

38. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

39. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or omits material facts, including material information about CalciMedica's financial projections, relied upon by Piper Sandler for its financial analysis, the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Piper Sandler, and Piper Sandler's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Stock Issuance.

41. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

42. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

**COUNT II**
**Claims Against the Individual Defendants for**
**Violations of Section 20(a) of the Exchange Act**

43. Plaintiff repeats all previous allegations as if set forth in full.

44. The Individual Defendants acted as controlling persons of Graybug within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Graybug, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Graybug's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Graybug, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Stock Issuance, unless and until defendants disclose and disseminate the material information identified above to Graybug stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: December 28, 2022

**WEISS LAW**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile: 310/209-2348
-and-
Michael Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Telephone: 404/692-7910
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS